UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

2004 SEP 29 A 9:20

| | | |
|---|---|---|
| DANIEL J. O'HARE and MICHAEL R. STEWART, individually and on behalf of nominal parties TDF & COAL, INC. and VULCAN POWER GROUP, L.L.C. | § | |
| v. | § | CIVIL ACTION NO. SA-04-CA-0566-OG |
| VULCAN CAPITAL, L.L.C., VULCAN ADVANCED MOBILE POWER SYSTEMS, L.L.C., FORD F. GRAHAM, and KEVIN C. DAVIS | § | |

## DEFENDANTS' ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTER-CLAIMS

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Vulcan Capital, L.L.C. ("Vulcan Capital"), Vulcan Advanced Mobile Power Systems, L.L.C. ("Vulcan AMPS"), Ford F. Graham ("Graham") and Kevin C. Davis ("Davis") (collectively "Defendants") file their Original Answer, Affirmative Defenses and Counter-claims.

## I. OBJECTIONS

1. Pursuant to Federal Rule of Civil Procedure 12(b)(2), Vulcan AMPS objects to the Court's exercise of personal jurisdiction over it.

## II. ANSWER

2. The allegations contained in paragraph 1 of Plaintiffs' Original Petition are admitted.

14/15

3. The allegations contained in paragraph 2 of Plaintiffs' Original Petition are admitted.

4. The allegations contained in paragraph 3 of Plaintiffs' Original Petition are admitted.

5. The allegations contained in paragraph 4 of Plaintiffs' Original Petition are admitted.

6. The allegations contained in paragraph 5 of Plaintiffs' Original Petition are admitted.

7. The allegation contained in paragraph 6 of Plaintiffs' Original Petition that TDF & Coal, Inc.'s ("TDF&C") principal place of business is San Antonio, Texas is denied. The remaining allegations in paragraph 6 are admitted.

8. The allegation contained in paragraph 7 of Plaintiffs' Original Petition that Vulcan Power Group, L.L.C.'s ("Vulcan Power") principal place of business is Delaware is denied. The remaining allegations in paragraph 7 are admitted.

9. The allegations contained in paragraph 8 of Plaintiffs' Original Petition are admitted.

10. The allegations contained in paragraph 9 of Plaintiffs' Original Petition are denied. Because this case has been properly removed to federal court solely on the basis of diversity of citizenship, venue is determined by 28 U.S.C. § 1391(a), not Texas law, and venue is not proper in the Southern District of Texas.

11. The allegations contained in paragraph 9 of Plaintiffs' Original Petition are denied.

12. Defendants also demand trial by jury and rely upon Plaintiffs' jury demand.

13. The allegations contained in paragraph 12 of Plaintiffs' Original Petition are admitted.

14. The allegations contained in paragraph 13 of Plaintiffs' Original Petition are admitted.

15. The allegations contained in paragraph 14 of Plaintiffs' Original Petition are admitted.

16. The allegation contained in paragraph 15 of Plaintiffs' Original Petition that Plaintiffs Daniel J. O'Hare ("O'Hare") and Michael R. Stewart ("Stewart") are capable of fairly and adequately representing TDF&C are denied. O'Hare and Stewart do not represent the interests of TDF&C and their decision to file the instant lawsuit is contrary to TDF&C's best interests. The remaining allegations in paragraph 15 are admitted.

17. The allegations contained in paragraph 16 of Plaintiffs' Original Petition are denied.

18. The allegations contained in paragraph 17 of Plaintiffs' Original Petition are denied.

19. The allegations contained in paragraph 18 of Plaintiffs' Original Petition are denied.

20. The allegations contained in paragraph 19 of Plaintiffs' Original Petition are denied.

21. The allegations contained in paragraph 20 of Plaintiffs' Original Petition are denied.

22. The allegations contained in paragraph 21 of Plaintiffs' Original Petition are denied.

23. The allegations contained in paragraph 22 of Plaintiffs' Original Petition are denied.

24. The allegations contained in paragraph 23 of Plaintiffs' Original Petition are denied.

25. The allegations contained in paragraph 24 of Plaintiffs' Original Petition are denied.

26. The allegations contained in paragraph 25 of Plaintiffs' Original Petition are denied.

27. The allegations contained in paragraph 26 of Plaintiffs' Original Petition are denied.

28. The allegations contained in paragraph 27 of Plaintiffs' Original Petition are denied.

29. The allegations contained in paragraph 28 of Plaintiffs' Original Petition are denied.

30. The allegations contained in paragraph 29 of Plaintiffs' Original Petition are denied.

31. The allegations contained in paragraph 30 of Plaintiffs' Original Petition are denied.

32. The allegations contained in paragraph 31 of Plaintiffs' Original Petition are denied.

33. The allegations contained in paragraph 32 of Plaintiffs' Original Petition are denied.

34. The allegations contained in paragraph 33 of Plaintiffs' Original Petition are denied.

35. The allegations contained in paragraph 34 of Plaintiffs' Original Petition are denied.

36. The allegations contained in paragraph 35 of Plaintiffs' Original Petition are denied.

37. The allegations contained in paragraph 36 of Plaintiffs' Original Petition are denied.

38. The allegations contained in paragraph 37 of Plaintiffs' Original Petition are denied.

39. The allegations contained in paragraph 38 of Plaintiffs' Original Petition are denied. Defendants respectfully request that Plaintiffs take nothing on all of their claims and causes of action.

## III. AFFIRMATIVE DEFENSES

### A. Unclean Hands

40. The allegations in paragraphs 1 through 39 are incorporated herein by reference for all purposes as if stated fully.

41. Plaintiffs have engaged in numerous intentional, unconscionable acts during their tenure with Vulcan Power and Vulcan AMPS. For example: 1) Plaintiffs misused their positions as officers of Vulcan Power and Vulcan AMPS to secretly pay themselves salaries far in excess of what they were entitled to receive and what the Vulcan Power Board approved; 2) Plaintiffs intentionally neglected their duties at Vulcan Power and Vulcan AMPS and in violation of their agreements with these entities pursued their personal business interests at times they claimed to

be working for Vulcan Power and Vulcan AMPS; 3) Plaintiffs misused their positions as officers of Vulcan Power and Vulcan AMPS to fraudulently obtain monies and compensation to which they were not entitled; and 4) Plaintiffs have intentionally, and possibly illegally, intercepted company e-mails which were not addressed to them. It is Plaintiffs, not Defendants, who have abused their positions of trust at Vulcan Power and Vulcan AMPS to benefit themselves at the expense of these companies. This inequitable conduct on the part of Plaintiffs has an immediate and necessary relation to the equitable relief they are seeking from this Court.

42. Because Plaintiffs come before the Court with unclean hands, their request for preliminary and permanent injunctive relief should be denied.

## IV.
## COUNTER-CLAIMS

### A. Jurisdiction

43. Subject to its objection to personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), Vulcan Advanced Mobile Power Systems, L.L.C. files the following counter-claims. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (providing supplemental jurisdiction over additional claims so related to the original claim that they form part of the same case or controversy).

### B. Parties

44. Plaintiff/Counter-defendant Daniel J. O'Hare is an individual residing in San Antonio, Texas and may be served through his attorney in this action, Jean C. Frizzell, at 1100 Louisiana, Suite 5300, Houston, Texas 77002.

45. Plaintiff/Counter-defendant Michael R. Stewart is an individual residing in Hiawassee, Georgia and may be served through his attorney in this action, Jean C. Frizzell, at 1100 Louisiana, Suite 5300, Houston, Texas 77002.

46. Counter-defendant Brenden Stewart is an individual residing in Wilmington, North Carolina and may be served at his home address at: 2112 Metts Avenue, Wilmington, North Carolina 28403.

47. Counter-defendant Mike Gosselin ("Gosselin") is an individual residing in Wilmington, North Carolina and may be served at his home address at: 32 Sunset Avenue, Wilmington, North Carolina 28401.

48. Defendant/Counter-plaintiff Vulcan Advanced Mobile Power Systems, L.L.C. is a Delaware limited liability company with its principal place of business at Elizabethtown, North Carolina. Vulcan AMPS is a citizen of Texas, New Jersey and New York.

## C. Factual Background

49. Vulcan AMPS is in the business of manufacturing large, mobile power generators. O'Hare and Stewart are disgruntled former employees, directors and members of the Board of Managers of Vulcan AMPS and Vulcan Power. O'Hare held a number of positions at Vulcan AMPS, including CFO. Stewart was a Vice President and head of Human Resources at Vulcan AMPS. O'Hare's and Stewart's relationship with Vulcan AMPS and Vulcan Power was terminated on or about, May 12, 2004 and June 17, 2004, respectively, because O'Hare and Stewart conspired to make intentional material misrepresentations concerning their employment at Vulcan AMPS, defraud the company of thousands of dollars, and because of their generally poor job performance.

50. Brenden Stewart is Stewart's son and was the former Human Resources Manager at Vulcan AMPS. Brenden Stewart was terminated on June 17, 2004. Gosselin is Stewart's

nephew and was the former IT Manager at Vulcan AMPS. Gosselin resigned the following Monday, June 21, 2004. Brenden Stewart and Gosselin were part of and assisted the conspiracy headed by O'Hare and Stewart to defraud Vulcan AMPS.

51. In November or December of 2003, Stewart, in his position as head of Human Resources, represented to Graham, the President of Vulcan AMPS, and Campbell, the Senior Vice President of Operations of Vulcan AMPS, that someone with Stewart's qualifications working in the Elizabethtown, North Carolina area would be entitled to a salary of between $300,000 and $400,000 per year. At that time, Stewart also represented to Graham and Campbell that someone with O'Hare's qualifications working in the Elizabethtown area would also be entitled to a salary of between $300,000 and $400,000 per year.

52. Relying on Stewart's representations concerning the appropriate level of compensation for himself and O'Hare, Vulcan AMPS paid O'Hare and Stewart total compensation of approximately $225,000 each per year. However, Stewart intentionally overstated the levels of compensation being paid in the Elizabethtown area. In fact, since the termination of O'Hare and Stewart, Vulcan AMPS has been able to out-source Michael Stewart's and Brenden Stewart's duties for approximately $18,000 per year.

53. O'Hare was aware of Stewart's misrepresentation of the levels of compensation being paid in the Elizabethtown area and took advantage of an excessive salary which he knew he was not entitled to receive and which he knew was not commensurate with salaries typically being paid in the Elizabethtown area.

54. During talks with Vulcan AMPS in November and December of 2003 and January of 2004, O'Hare also intentionally concealed the fact that his former employer, AIG, had terminated him for incompetence. O'Hare's relationship with AIG was critical to Vulcan

AMPS's decision to hire O'Hare because, at that time, Vulcan AMPS was in the process of purchasing two power plants owned by AIG and at which O'Hare had worked during his tenure with AIG. Had O'Hare disclosed this fact to Vulcan AMPS, Vulcan AMPS would not have hired him.

55. During their employment at Vulcan AMPS, Stewart and O'Hare continued their pattern of fraud. Through his position at two other companies which did contract work for Vulcan AMPS, MPower and EOS, O'Hare would approve false invoices from HR Strategies, a company owned by Stewart, and phony reimbursement requests for travel expenses. These inflated MPower and EOS bills were then passed on to Vulcan AMPS as part of an expense reimbursement agreement between Vulcan AMPS and MPower and EOS. Upon information and belief, O'Hare and Stewart would then embezzle the excess funds from MPower and EOS.

56. When Stewart was terminated on June 17, 2004, Brenden Stewart was also terminated. On that same day, the hard copy of the QA/QC documents for the Vulcan AMPS mobile generators which had been in Brenden Stewart's offices disappeared. After Gosselin resigned the following Monday, it was discovered that a hard-drive containing the QA/QC manuals was also missing. As Network Administrator, Gosselin would have had access to the missing hard-drive. These were the only copies of the QA/QC manuals and are critical to Vulcan AMPS's business. Although Counter-defendants initially denied having taken these items, they subsequently returned the hard-drive which contained the QA/QC manuals. They have not yet returned the hardcopies of the QA/QC manuals.

57. In addition, in the present lawsuit, O'Hare and Stewart have also filed claims for breach of employment contracts. Upon information and belief, these alleged employment

agreements were procured through fraud and are invalid and Plaintiffs/Counter-defendants are aware that the agreements are fraudulent and invalid.

58. Counter-defendants' relationship with Vulcan AMPS has been characterized by a consistent pattern of fraud and deception on the part of Counter-defendants which has injured Vulcan AMPS on numerous occasions.

**D. <u>Causes of Action</u>**

<u>Fraud by Stewart</u>

59. The allegations in paragraphs 1 through 58 are incorporated herein by reference for all purposes as if stated fully.

60. Stewart allowed Vulcan AMPS to pay bills from Vulcan AMPS contractors which he knew were inflated and included improper charges. Upon information and belief, O'Hare and Stewart would then embezzle the excess funds from these contractors.

61. In addition, Stewart, in his capacity as head of Human Resources for Vulcan AMPS, falsely represented to Vulcan AMPS that someone with his qualifications working in the Elizabethtown, North Carolina area would be entitled to a salary of between $300,000 and $400,000 per year. Stewart also falsely represented that someone with O'Hare's qualifications would be entitled to a salary of between $300,000 and $400,000 per year. Stewart either knew these representations were false when he made them, or he made them recklessly without any knowledge of their truth. Stewart intended that Vulcan AMPS would rely on these false representations. Vulcan AMPS did, in fact, reasonably rely on Stewart's representations in setting his and O'Hare's salary and was injured as a result.

62. In the present lawsuit, Stewart has also filed a claim for breach of an employment contract. Upon information and belief, this alleged employment agreement was procured through fraud and is invalid and Stewart is aware that the agreement is fraudulent and invalid.

63. Vulcan AMPS seeks actual damages that it may prove at trial, pre- and post-judgment interest, and, as Counter-defendants' conduct was caused maliciously, willfully and wantonly with intent to harm Vulcan AMPS, punitive and exemplary damages in an amount be determined at trial.

Fraud by O'Hare

64. The allegations in paragraphs 1 through 63 are incorporated herein by reference for all purposes as if stated fully.

65. O'Hare allowed Vulcan AMPS to pay bills from Vulcan AMPS contractors which he knew were inflated and included improper charges. Upon information and belief, O'Hare and Stewart would then embezzle the excess funds from these contractors.

66. In addition, O'Hare concealed from Vulcan AMPS the fact that his former employer, AIG, fired him for incompetence. O'Hare's relationship with AIG was material to Vulcan AMPS's decision to hire O'Hare because, at that time, Vulcan AMPS was in the process of purchasing two power plants owned by AIG and at which O'Hare had worked during his tenure with AIG. O'Hare intended that Vulcan AMPS would rely on his concealment of this material fact. Vulcan AMPS would not have hired O'Hare if it had known he had been fired by AIG and was injured as a result.

67. In the present lawsuit, O'Hare has also filed a claim for breach of an employment contract. Upon information and belief, this alleged employment agreement was procured through fraud and is invalid and O'Hare is aware that the agreement is fraudulent and invalid.

68. Vulcan AMPS seeks actual damages that it may prove at trial, pre- and post-judgment interest, and, as Counter-defendants' conduct was caused maliciously, willfully and wantonly with intent to harm Vulcan AMPS, punitive and exemplary damages in an amount be determined at trial.

Conversion by Michael Stewart, O'Hare, Brenden Stewart and Gosselin

69. The allegations in paragraphs 1 through 68 are incorporated herein by reference for all purposes as if stated fully.

70. Michael Stewart, O'Hare, Brenden Stewart and Gosselin, acting individually or in concert and without authorization from Vulcan AMPS, assumed and exercised the right of ownership over Vulcan AMPS's QA/QC manuals and a hard-drive containing a copy of the QA/QC manuals to the exclusion of Vulcan AMPS's legitimate ownership right to those items.

71. Vulcan AMPS seeks actual damages that it may prove at trial, pre- and post-judgment interest, and, as Counter-defendants' conduct was caused maliciously, willfully and wantonly with intent to harm Vulcan AMPS, punitive and exemplary damages in an amount be determined at trial.

Breach of Fiduciary Duty by Stewart and O'Hare

72. The allegations in paragraphs 1 through 71 are incorporated herein by reference for all purposes as if stated fully.

73. In their capacities as members of the Board of Managers of Vulcan AMPS and officers of Vulcan AMPS, Stewart and O'Hare owed Vulcan AMPS a fiduciary duty. Stewart and O'Hare breached their fiduciary duty to Vulcan AMPS by allowing Vulcan AMPS to pay invoices from Vulcan AMPS contractors which Stewart and O'Hare knew were phony and inflated for their own personal benefit. Stewart also breached this duty by misrepresenting the compensation he and O'Hare were entitled to receive. O'Hare also breached this duty by concealing the circumstances under which he left AIG and by allowing Vulcan AMPS to pay bills from subcontractors he knew to be false for his own personal benefit. Finally, both Stewart and O'Hare breached this duty by absconding with Vulcan AMPS's QA/QC manuals and by

fraudulently obtaining invalid employment agreements for an improper purpose. Vulcan AMPS was damaged because of these breaches.

74. Vulcan AMPS seeks actual damages that it may prove at trial, pre- and post-judgment interest, and, as Counter-defendants' conduct was caused maliciously with intent to harm Vulcan AMPS, punitive and exemplary damages in an amount be determined at trial.

Civil Conspiracy by Michael Stewart, O'Hare, Brenden Stewart and Gosselin

75. The allegations in paragraphs 1 through 74 are incorporated herein by reference for all purposes as if stated fully.

76. Michael Stewart, O'Hare, Brenden Stewart and Gosselin agreed to misrepresent material facts concerning the employment of Michael Stewart and O'Hare at Vulcan AMPS, abscond with property belonging to Vulcan AMPS, profit from O'Hare's approval of invoices he knew to be false and violate the fiduciary duties Stewart and O'Hare owed to Vulcan AMPS. The actions of these conspirators caused injury to Vulcan AMPS. Michael Stewart, O'Hare, Brenden Stewart and Gosselin acted pursuant to a common scheme to defraud and injure Vulcan AMPS's business for their own personal gain.

77. Vulcan AMPS seeks actual damages that it may prove at trial, pre- and post-judgment interest, and, as Counter-defendants' conduct was caused maliciously, willfully and wantonly with intent to harm Vulcan AMPS, punitive and exemplary damages in an amount be determined at trial.

WHEREFORE, Plaintiffs seek from this Court the following relief:

1) An award of monetary damages against Counter-defendants that include, but are not limited to, actual damages that may be proven at trial, consequential damages, pre- and post-judgment interest, and punitive damages;

2) an order awarding to Counter-plaintiffs their costs of litigation, including attorneys' fees; and

3) an order awarding all such other and further necessary or proper relief, as this Court may determine Counter-plaintiffs are lawfully entitled, either in law or in equity.

Dated this 29 th day of September, 2004.

Respectfully submitted,

By: ______________________
Amy Marlyse Burgert
Texas State Bar No. 00794865
700 Louisiana, Suite 3600
Houston, Texas77002
(713) 221-1651 (telephone)
(713) 224-6410 (facsimile)

Attorney in Charge for Vulcan Capital, L.L.C., Vulcan Advanced Mobile Systems, L.L.C., Ford F. Graham and Kevin C. Davis

OF COUNSEL:
Harry P. "Hap" Weitzel
Texas State Bar No. 00789033
MAYER, BROWN, ROWE & MAW, L.L.P.
700 Louisiana, Suite 3600
Houston, Texas77002
(713) 221-1651 (telephone)
(713) 224-6410 (facsimile)

Jon T. Powell
Texas State Bar No. 00797260
THE POWELL LAW FIRM
314 East Commerce Street, Suite 710
San Antonio, Texas 78205
(210) 225-9300 (telephone)
(210) 225-9301 (facsimile)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendants' Original Answer, Affirmative Defenses and Counter-claims has been forwarded to all counsel of record by hand delivery on this 29th day of September, 2004.

Mr. Jean Frizzell
Gibbs & Bruns, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002

Amy Marlyse Burgert